UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **MILTON GREEN,** | ) |
| | ) |
| Plaintiff, | )  Case No. 4:19-cv-01711-DDN |
| | ) |
| v. | ) |
| | ) |
| **CITY OF ST. LOUIS** *et al.*, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF JEFFREY NOBLE**

COME NOW Defendants City of St. Louis ("City") and Christopher Tanner ("Tanner") (collectively "Defendants"), by and through their attorney Sheena Hamilton, City Counselor for the City of St. Louis, and pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, hereby submit this memorandum of law in support of their motion to exclude the report and testimony of Jeffrey Noble. In support thereof, the following statements are made:

**INTRODUCTION**

In this lawsuit, Plaintiff Milton Green ("Plaintiff") alleges that his rights under the Fourth and Fourteenth Amendments were violated on June 21, 2017 by Tanner unreasonably seizing him and using excessive force against him. Further, Plaintiff alleges City's official policy or customs caused Tanner's unconstitutional conduct, in addition to alleging City's failure to train and supervise Tanner caused the unconstitutional conduct.

On June 21, 2017, Plaintiff was shot during the chaotic aftermath of a vehicle pursuit during which suspects fled the pursued vehicle and exchanged gunfire with City police detectives. Mistakenly believing that Plaintiff was one of the suspects who had

1

shot at detectives, Tanner shot Plaintiff after observing Plaintiff pick up a gun and turn towards him.

**Opinions of Jeffrey Noble**

Plaintiff has designated Jeffrey Noble in this case as a police practices expert. Mr. Noble has a background in law enforcement, and Plaintiff has elected him to testify to his opinions related to accepted police practices, Tanner's use of deadly force against Plaintiff, the investigation into this incident, and comments made by the Interim Chief of Police Lawrence O'Toole on the night of the incident. Ex. A, Plaintiff's 26(a) Expert Disclosures. According to his report, Mr. Noble limited his review of the record to the following materials: 1) Plaintiff's Complaint, 2) Police Report CN 17-030298 (DEF. 000001-001213), 3) Rebecca Rivas, *Did the Police Chief lie about the friendly fire shooting of a black cop? Mayor said she would fire Police Chief if he lied to her and citizens*, St. Louis American, July 21, 2017, 4) Rebecca Rivas, *'People are saying they want accountability': A conversation with Police Chief John Hayden*, St. Louis American, January 10, 2018., 5) John Eligon, *A White Officer shoots a Black Colleague, Deepening a Racial Divide*, New York Times, November 24, 2019.
 Ex. B, Report of Mr. Jeffrey Noble, MILTON_GREEN.000904, ¶ 8.

Based solely on his review of the allegations in the Complaint, the police report and three newspaper articles," Noble concludes that an immediate threat of death or seriously bodily injury was absent and Tanner's use of force was therefore "excessive," "objectively unreasonable," and "inconsistent with generally accepted police practices." *Id*. at MILTON_GREEN.000913, ¶ 42.  Additionally, Mr. Noble concludes:

> Any reasonable police officer would have known that Detective Carlson was giving [Plaintiff] commands and

2

> that [Plaintiff] was complying with the commands. Rather than taking a position of cover or assessing the scene, it appears that Detective Tanner rushed in without considering the actions of the officers who had arrived before him and who were in control of the scene.

*Id.* at ¶ 41. Further, he opines, "[i]t is incumbent for an investigator to draw reasonable conclusions, or at least identify significant conflicts when assessing an officer's credibility in an officer-involved shooting. Here, there is significant evidence that would cause a reasonable officer to question the credibility of Detective Tanner." *Id*. at MILTON_GREEN.000914, ¶ 47.

This Court should exclude the testimony of Mr. Noble for at least five reasons: 1) his opinions are based on insufficient facts; 2) his opinions rely on improper credibility determinations and speculation about witnesses' states of mind, 3) his opinions are legal conclusions that invade the province of the Court and supply the fact finder with no information other than what Mr. Noble believes, 4) they are irrelevant and immaterial; and 5) his opinions constitute improper expert opinions on legal matters.

## **LEGAL STANDARD**

The admission of expert testimony is governed by Federal Rule of Evidence ("FRE") 702; *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably the principles and methods to the facts of the case."

3

"The touchstone for the admissibility of expert testimony is whether it will assist or be helpful to the trier of fact." *McKnight ex rel. Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1408 (8th Cir. 1994). The party seeking admission of expert testimony has the burden of establishing admissibility. *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

FRE 702 requires a trial judge to act as a "gatekeeper." *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012) quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). As "gatekeeper," a trial court must determine at the outset whether a proffer of expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The trial judge should admit expert testimony only if it is both relevant and reliable. *Id*. To demonstrate the expert testimony is relevant, "'the proponent must show that the expert's reasoning . . . was applied properly to the facts at issue.'" *Khoury v. Philips Med. Sys.*, 614 F.3d 888, 892 (8th Cir. 2010) quoting *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010).

Further, opinions that "merely tell the jury what result to reach" are not admissible. *Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010); Advisory committee's note Fed. R. Evid. 704; *Hale County A & M Transp., LLC v. City of Kansas City, Missouri*, 998 F. Supp. 2d 838, 845 (E.D. Mo. 2014). Although expert testimony is not objectionable simply because it embraces an ultimate issue to be decided by the trier of fact, "[a] trial court may, however, exclude opinion testimony if it is so couched in legal conclusions that it supplies the fact finder with no information other than what the witness believes the verdict should be." *Williams v. Wal-Mart Stores, In*c., 922 F.2d

4

1357, 1360 (8th Cir. 1990) citing Fed. R. Evid. 704(a); *Hogan v. AT&T*, 812 F.2d 409, 411 (8th Cir. 1987).

In addition, it is "plain error to admit testimony that is a thinly veiled comment on a witness' credibility." *United States v. Benedict,* 815 F.3d 377, 382 (8th Cir. 2016) citing *Nichols v. Am. Nat'l Ins. Co*., 154 F.3d 875, 884 (8th Cir. 1998). "It is the exclusive province of the jury to determine the believability of the witness. . . An expert is not permitted to offer an opinion as to the believability or truthfulness of a [witness's] story." *Bachman v. Leapley*, 953 F.2d 440, 441 (8th Cir. 1992). *See also DiCarlo v. Keller Ladders, Inc*., 211 F.3d 465, 468 (8th Cir. 2000) (citation omitted) (determining the credibility of a witness is the jury's province, whether the witness is lay or expert).

Further, expert testimony on legal matters is inadmissible because "[m]atters of law are for the trial judge, and it is the judge's job to instruct the jury on them." *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc*., 320 F.3d 838, 841 (8th Cir. 2003).

## ARGUMENT

1. **This Court should exclude Mr. Noble's opinion that Tanner's use of force was "excessive," "objectively unreasonable," and "inconsistent with generally accepted police practices" because it is premised on insufficient facts.**

Rule 702(b) provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: . . . (b) ***the testimony is based on sufficient facts or data*** (emphasis added).

In Mr. Noble's report, he writes ". . . although Detective Tanner claimed [Plaintiff] turned in his direction, he did not provide any information regarding any movement by [Plaintiff] to raise the firearm or that would suggest that Officer Green was

5

an immediate threat to Detective Tanner or anyone else." Ex. B, Report of Jeffrey Noble, MILTON_GREEN.000912, ¶ 40. He also writes, "[a]bsent an immediate threat of death or serious bodily injury to Detective Tanner or anyone else, Detective Tanner's use of deadly force was excessive, objectively unreasonable and inconsistent with generally accepted police practices." *Id*. at ¶ 42.

Contrary to Noble's unsupported conclusions, the record in this case establishes that Tanner's use of force occurred in the chaotic and uncertain aftermath of a vehicle pursuit that culminated in a shootout between the suspects and police detectives. Ex. D, Deposition of Christopher Tanner, p. 51, Ex. E, Deposition of Brett Carlson, p. 39, Ex. F, Deposition of Craig Sayer, p. 57. Tanner, from roughly fifty (50) feet away, observed Plaintiff on the ground. Ex. D, Deposition of Christopher Tanner, p. 79. Tanner believed Plaintiff to be one of the suspects who had just shot at the detectives. *Id*. at p. 82. From there, Tanner observed Plaintiff get up from the ground and pick up his gun, which was about two (2) feet in front of Plaintiff. *Id.* at 83. Plaintiff admitted that he walked a few steps and picked up his gun prior to Tanner firing. Ex. C, Deposition of Milton Green, p. 80, 82. Tanner testified that he fired a shot only after he observed Plaintiff raise the gun towards Tanner and Detective Matthew Burle. Ex. D, Deposition of Christopher Tanner, p. 83, 93. Based on the gun rising in his direction, Tanner viewed Plaintiff as an immediate threat. Ex. D, Deposition of Christopher Tanner, p. 244. Additionally, Plaintiff admits that he heard a police officer say "Police, drop the gun," right before being shot. Ex. C, Deposition of Milton Green, p. 87.

According to Mr. Noble's report, he did not review Plaintiff's deposition or any of the other depositions over this matter, and therefore, his opinions lack foundation and

6

his testimony will be based on insufficient facts. If he had reviewed the deposition of Tanner, as stated above, he would realize that the deposition provides evidence that Plaintiff raised the firearm toward Tanner, suggesting that Plaintiff was an immediate threat.  In rendering his opinions, he only reviewed the *allegations* of the Complaint, the Police Report (Def 0001-1213), and three newspaper articles on the incident, thereby disregarding Tanner's observations and perspective of events leading to the shooting.

His opinions fail to take into consideration the testimony of not only Tanner, but other witnesses with first-hand knowledge including Brett Carlson, Craig Sayer, Joseph Bell, Matthew Burle, and Paul Piatchek. Deposition testimony of officers at the scene is substantial evidence that Mr. Noble failed to review. His opinion is clearly based on insufficient information. By failing to review Tanner's deposition, Mr. Noble fails to gather all the facts known to Tanner, namely that Tanner observed Plaintiff reach for a weapon and then turn in his direction, facts from which a reasonable finder of fact could find it was objectively reasonable for Tanner to view Plaintiff as immediate threat. Therefore, Mr. Noble's opinions lack foundation because his opinions are based on insufficient facts Mr. Noble's report and testimony should be excluded from trial.

2. **This Court should exclude Mr. Noble's opinion in that Tanner's use of force was "excessive," "objectively unreasonable," and "inconsistent with generally accepted police practices" because it is premised upon impermissible witness credibility determinations and speculation concerning Tanner's and Plaintiff's states of mind.**

This Court should strike Mr. Noble's opinions because he purports to revolve issues of fact based solely upon impermissible determinations of witness credibility.

Mr. Noble's opinion that Tanner's use of force was excessive and objectively unreasonable is based upon his unsupported conclusion that there was no immediate

threat of death or serious bodily harm to Tanner. Ex. B. MILTON_GREEN.000913, ¶ 42. Mr. Noble writes ". . . although Detective Tanner claimed Officer Green turned in his direction, he did not provide any information regarding any movement by Officer Green to raise the firearm or that would suggest that Officer Green was an immediate threat to Detective Tanner or anyone else." Ex. B, MILTON_GREEN.000912, ¶ 40. Further, Mr. Noble writes "Here, there is significant evidence that would cause a reasonable officer to question the credibility of Detective Tanner." *Id*. at 14, ¶ 47.

These opinions appear to be based, primarily, upon a determination made by Mr. Noble that Tanner lacks credibility and upon *allegations* in the Complaint. This Court should bar Mr. Noble from testifying that there was no immediate threat; that there was no evidence indicating that Plaintiff did not raise the firearm; and that Tanner is not credible because these opinions are premised solely upon improper determinations of witness credibility as well as speculation concerning Tanner's state of mind.

Contrary to Noble's unsupported conclusions, as stated above, Tanner's deposition in this case contradicts Mr. Noble's opinions that there was no immediate threat and that Tanner did not provide any information about any movement by Officer Green to raise the firearm. Mr. Noble appears to simply deny that Tanner feared Plaintiff was an immediate threat, which is a credibility determination that is the jury's to make.

Mr. Noble's opinion that the use of force was "excessive" and "unreasonable" is an impermissible determination of witness credibility. Throughout, Mr. Noble purports to make factual findings premised upon the allegations in the Complaint, even in instances where the depositions of officers with first-hand knowledge provide conflicting testimony. "Weighing evidence and determining credibility are tasks exclusive to the

8

jury." *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 883 (8th Cir. 1998). Thus, this Court should rule that Mr. Noble's opinion that Tanner's use of force was "objectively unreasonable" is inadmissible because it is based solely upon his own determinations of witness credibility.

The Court should further exclude Mr. Noble's opinion that Tanner's use of force was "excessive" and "objectively unreasonable" because it is based upon speculation concerning Tanner's state of mind. A witness is not competent to testify as to the state of mind of others. *Fenje v. Feld*, 301 F. Supp. 2d 781, 816 (N.D. Ill. Dec. 8, 2003). In his Report, Mr. Noble provides the opinion that "it appears that Detective Tanner rushed in without considering the actions of the officers who had arrived before him and who were in control of the scene." Ex. B, MILTON_GREEN.000913, ¶ 41. This opinion appears to be taken directly from the Plaintiff's Complaint, which alleges "Had Defendant Tanner exercised due care, he would have noticed that Officer Green was calmly talking to Detective Carlson . . ., and that Detective Carlson had the situation under control." Plaintiff's Complaint, ¶ 39. There is testimony from Detectives Tanner, Brett Carlson, and Craig Sayer describing the scene as chaotic. Ex. C, Deposition of Tanner, p. 51, Ex. D, Deposition of Brett Carlson, p. 39, Ex. E, Deposition of Craig Sayer, p. 57. The opinion that Tanner rushed in without considering the actions of the officers who arrived before him is inadmissible not only because it requires that Mr. Noble disregard the testimony of police officers present at the scene, but also because it requires Mr. Noble to resort to speculation about Tanner's state of mind during the shooting.

Mr. Noble does not only discredit Tanner's credibility in his opinions, but he also discredits the credibility of Detective Matthew Burle. His Report states, "Officer Burle is

9

the only officer that supports Detective Tanner's claim" without any evidence that other officers at the scene do not support Tanner's claim. Ex. B, MILTON_GREEN.000913, ¶ 44. This is yet another example of Mr. Noble making an improper witness credibility witness determination and basing his opinion on speculation. Mr. Noble has not reviewed the other officer's depositions so he does not know whether other officers at the scene support Tanner's claim, so any opinion as to such would be speculation. Additionally, this opinion appears to demonstrate that Matthew Burle should not be believed. By stating he is "the only officer to support Tanner's claim," it appears that Mr. Noble is trying to say that one officer is not enough for the jury to believe Tanner's account.

Mr. Noble's opinion that Tanner's use of force was "excessive," "objectively unreasonable," and "inconsistent with generally accepted police practices" is premised entirely upon improper witness credibility determinations and speculation regarding Tanner's state of mind during the shooting. Accordingly, the Court should bar Mr. Noble from testifying that Tanner's use of force was unreasonable because that opinion is not based upon a reliable foundation. *Daubert*, 509 U.S. at 597.

3. **This Court should exclude Mr. Noble's opinion that Tanner's use of force was "excessive" and "objectively unreasonable" because it is a legal conclusion and invades the province of the Court.**

This Court should further bar Mr. Noble from testifying that Tanner's use of force was "excessive" and "objectively unreasonable" because it is a legal conclusion that invades the province of the court, and it supplies the jury with no information other than what Mr. Noble believes the verdict should be.

10

The reasonableness of an officer's actions is a legal conclusion in a § 1983 excessive force case. *Sanders v. Studdard*, 2014 U.S. Dist. LEXIS 98817 at *18-19 (Mo. W.D. Feb. 12, 2014) citing *Scherrer v. City of Bella Villa, No. 4:07-CV-306 (CEJ)*, 2009 U.S. Dist. LEXIS 18129 at *8-9; see also *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (citations omitted) (finding expert testimony on the reasonableness of force was inadmissible even if the testimony did not use the word "excessive").

Here, Mr. Noble's report purports to resolve issues of fact and renders an opinion that Tanner's use of force was "excessive" and "objectively unreasonable." Ex. B, MILTON_GREEN.000913, ¶ 42. This opinion "is so couched in legal conclusions that it supplies the fact finder with no information other than what [he] believes the verdict should be." *Williams*, 922 F.2d at 1360; Fed. R. Evid. 704(a); *Hogan*, 812 F.2d at 411.

It is well established that the reasonableness of an officer's actions is a legal question, and this Court should find that Mr. Noble's opinion concerning the "reasonableness" of Tanner's use of force is inadmissible because it invades the province of the Court. *See Alvarado v. Oakland Cnty.*, 809 F. Supp. 2d 680, 692 (E.D. Mich. 2011) (barring an expert from testifying as to any legal conclusions, such as whether the officers' conduct was reasonable or excessive).

4. **This Court should exclude Mr. Noble's opinion that the shooting investigation was inconsistent with generally accepted police practices and his opinion about Steven Burle's involvement in the investigation of the shooting because that testimony is irrelevant and immaterial to any issue to be decided in this case.**

An issue to be decided in this case is whether Tanner's use of force was reasonably necessary to prevent a significant threat of death or serious physical harm when he shot Milton Green. Mr. Noble's opinion that the investigation following the

11

incident was inconsistent with generally accepted police practices and his opinion that Steven Burle's involvement in the investigation created a conflict of interest should be excluded because it is irrelevant and immaterial to the issue to be decided by the jury. Additionally, an after-the-fact investigation is irrelevant and immaterial to the *Monell* claim because the investigation after the incident could not have caused Tanner to commit alleged unconstitutional conduct on June 17, 2017.

Mr. Noble criticizes that no one made conclusions about the results of the investigation (Ex. B, MILTON_GREEN.000913, ¶ 46) and how investigators did not question the credibility of Tanner. Ex. B, MILTON_GREEN.000914, ¶ 47(a)-(f). Whether Tanner's actions adhered to Police Department policy and procedure or any generally accepted police practices is not an issue to be decided by the jury in this case. Instead, jurors will be asked whether Tanner's use of deadly force was necessary to prevent a significant threat of death or serious physical harm to Tanner. See *Rahn v. Hawkins*, 464 F.3d 813, 818 (8th Cir. 2006); *Tennessee*, 471 U.S. at 11; see also Model Instruction 4.40, Manual of Model Civil Jury Instructions for the Districts Courts of the Eighth Circuit.

Therefore, any testimony concerning generally accepted police practices pertaining to the use of deadly force, or any other policing standards, should be excluded because it is irrelevant and likely to confuse the jury. Likewise, testimony concerning compliance with generally accepted police practices will serve only to muddy the straightforward issue to be decided in this case, which is whether or not Tanner reasonably believed Plaintiff posed a threat of death or serious physical harm to him at the moment of the shooting.

The Court should exclude Mr. Noble's opinion that Tanner or City violated generally accepted police policies or practices and bar him from testifying regarding these practices. See *Peterson*, 60 F.3d 475 (police practices expert may not offer opinions on "nationally accepted standards" or "Fourth Amendment standards"); *Sanders*, 2014 U.S. Dist. LEXIS 98817 at *16-17 (finding that an expert's opinions on whether certain national standards or department guidelines are consistent with constitutional law are "patently inadmissible" because they invade the province of the Court); *K.W.P. v. Kan. City Pub. Sch.*, 296 F. Supp. 3d 1121, 1127 (Mo. W.D. Oct. 31, 2017) (an expert cannot testify that following or failing to follow certain standards met or failed to meet the applicable legal standard, such as the "reasonableness" of an officer's actions).

Compliance, or lack thereof, with generally accepted police practices is irrelevant and immaterial to the issue to be decided in this case. Mr. Noble's opinion that Tanner's use of force violated or City violated alleged generally accepted police practices should therefore be excluded as irrelevant because it will not assist the jury to understand the evidence or to determine a fact in issue. FRE 702.

5. **This Court should exclude Mr. Noble's opinions regarding any statements made by Interim Chief of Police Lawrence O'Toole made to the media on the night of the shooting because it is irrelevant and immaterial.**

Mr. Noble should be excluded from testifying about statements made to the media by Interim Chief of Police Lawrence O'Toole following the incident on June 21, 2017, because these opinions are irrelevant and immaterial. One of the issues to be decided is whether Tanner's use of force was reasonably necessary to prevent death or serious physical harm. The other issue is regarding a *Monell* claim brought by Plaintiff. Whether O'Toole lied, mislead, or was simply being reserved in his statement to the media

13

following the incident is not an issue to be decided by the jury in this case. See *Rahn v. Hawkins*, 464 F.3d 813, 818 (8th Cir. 2006). "The touchstone for the admissibility of expert testimony is whether it will assist or be helpful to the trier of fact." *McKnight ex rel. Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1408 (8th Cir. 1994). Any opinions regarding comments made by O'Toole following the incident do not offer any scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue. Further, O'Toole's statements to the media after the fact could not have caused Tanner's alleged unconstitutional conduct on June 21, 2017. To the extent that Plaintiff will argue that the statements are relevant to a "ratification" theory of Monell liability, the facts do not support this. Therefore, any testimony concerning statements made to the media by O'Toole on the night of the shooting should be excluded because they are irrelevant and do not assist the jury.

**6. This Court should exclude Mr. Noble's opinions and statements concerning constitutional law because expert opinion on legal matters is inadmissible.**

In his report, Mr. Noble purports to set forth the constitutional standards governing uses of force. Ex. B, MILTON_GREEN.000906, ¶¶ 22-24. In particular, he cites *Graham v. Connor*, 490 U.S. 396 (1989) and *Tennessee v. Garner* as setting the constitutional standards addressing the use of deadly force by police. *Id*. Additionally, he cites *Brady v. Maryland*. Ex. B. MILTON_GREEN.000917, ¶ 51.

Expert testimony on legal matters is inadmissible. *S. Pine Helicopters*, 320 F.3d at 841. It is left to the Court to determine what law applies and interpret whether standards or guidelines are constitutional. *Id*. at 841 (citation omitted). Mr. Noble's purported identification of the constitutional standards governing law enforcement officer's use of deadly force is patently a legal opinion.

14

Providing instruction on the law is the exclusive province of the Court, and legal conclusions and instructions on the law by expert witnesses are therefore inadmissible. *Farmland Indus. v. Frazier-Parrott Commodities, Inc*., 871 F.2d 1402, 1409 (8th Cir. 1989) ("We have no doubt that the district court acted properly in ruling [the expert witness] could not testify regarding the requirements of the law"); *In re Acceptance Ins. Cos. Sec. Litig*., 423 F.3d 899, 905 (8th Cir. 2005) ("When expert opinions are little more than legal conclusions, a district court should not be held to have abused its discretion by excluding such statements"). Any opinion of Mr. Noble that incorporates, references or relies upon any purported constitutional standards is improper. Mr. Noble's legal instruction on the law invade the province of the Court, are irrelevant and prejudicial, and should be excluded.

WHEREFORE, for all of the reasons set forth above, Defendants respectfully requests that this honorable Court exclude Mr. Jeffrey Noble as an expert witness and strike his Report

    Respectfully submitted,

    SHEENA HAMILTON
    CITY COUNSELOR

    /s/ Thomas J. Wahl
    Andrew D. Wheaton  #65269 MO
    Associate City Counselor
    Thomas J. Wahl #71218MO
    Assistant City Counselor
    *Attorneys for Defendants*
    City Hall, Room 314,
    St. Louis, MO  63103
    314.622.3361
    FAX: 314.622.4956
    wheatona@stlouis-mo.gov
    wahlt@stlouis-mo.gov

## **CERTIFICATE OF SERVICE**

    I hereby certify that on December 12, 2022, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system.

                                              /s/ Thomas J. Wahl