UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MILTON GREEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CITY OF ST. LOUIS ) | No. 4:19 CV 1711 DDN |
| ) | |
| and ) | |
| ) | |
| CHRISTOPHER TANNER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motions of defendants City of St. Louis and Christopher Tanner for summary judgment (Doc. 89) and to exclude the report and testimony of plaintiff's expert Jeffrey Noble (Doc. 92), as well as the motion of plaintiff Milton Green to compel discovery (Doc. 101). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

For the reasons set out below, the Court sustains defendants' motion for summary judgment and denies defendants' motion to exclude and plaintiff's motion to compel as moot.

## BACKGROUND

Viewing the evidence in the light most favorable to plaintiff, the record establishes the following facts, taken from plaintiff's statement of material facts and defendants' statement of material facts not controverted by plaintiff. (Docs. 99-1, 100.) Shortly before 10:00 p.m. on June 21, 2017, defendant Tanner and other St. Louis Metropolitan Police Department (SLMPD) officers were conducting surveillance of a suspected stolen vehicle in downtown St. Louis. (Doc. 100 at ¶¶ 1, 3.) The stolen vehicle fled the police vehicles

once the occupants detected that they were being followed, and one of the officers deployed spike strips to puncture the stolen vehicle's tires. (*Id*. at ¶¶ 4-5.) Almost immediately after the vehicle's tires were spiked, the occupants of the stolen vehicle began shooting at the pursuing officers. (*Id*. at ¶ 6.) The stolen vehicle eventually crashed at the corner of Page and Astra, near plaintiff Milton Green's home. (*Id*. at ¶ 11; Doc. 99-1 at ¶ 4.)

Late in the evening of June 21, 2017, plaintiff, a 15-year SLMPD Officer, was off-duty and working on a car with his friend in the driveway that plaintiff shared with his neighbor. (*Id*. at ¶¶ 1-3.) While outside, he saw the stolen vehicle turn and crash at the intersection of Park and Astra. (*Id*. at ¶ 4-5.) He saw two individuals get out of the car and run to the gangway of his neighbor's house; shortly thereafter, another vehicle arrived, and two police officers began chasing the two individuals running through the gangway. (*Id*. at ¶¶ 6-7.) Plaintiff and his friend attempted to conceal themselves behind one of the cars in the driveway. (*Id*. at ¶ 12.) A third individual exited the crashed car and headed to the west side of plaintiff's house, dropping face down to the ground after hearing gunfire. (*Id*. at ¶¶ 11, 13.) When the third individual pointed a gun at plaintiff's friend's car, behind which plaintiff and his friend were hiding, plaintiff pointed his gun up and said, "Police, put the gun down;" the third individual ran towards the alley with his gun still pointed at plaintiff. (*Id*. at ¶¶ 15-16.) Plaintiff then heard from behind him, "Put the gun down." (*Id*. at ¶ 17.) Surmising that the command came from a police officer and that it was directed toward him, he dropped the gun and lay prone on the ground. (*Id*. at ¶¶ 18-19.) Between the time that he went prone and defendant Tanner shot him, he did not hear any more gunshots. (*Id*. at ¶ 21.)

One of the on-duty officers at the scene, Detective Carlson, then yelled out, "There's a[n] off-duty police officer here, don't shoot. His name [sic] Milton Green. He lives here. Don't shoot." (*Id*. at ¶ 24.) Detective Carlson told Green to come to him. (*Id*. at ¶ 25.) Plaintiff stood up; picked up his gun with his right hand, with the muzzle pointing towards the ground and his right arm at his side; and extended his left hand, which held his badge. (*Id*. at ¶¶ 27, 29-30, 36.) Plaintiff was looking at and walking towards Detective Carlson when he saw, in his peripheral vision, another officer approaching. (*Id*. at ¶¶ 28, 47.)

2

Defendant Tanner yelled at plaintiff to drop his gun but did not give him adequate time to put his weapon down. (*Id*. at ¶ 40.) Defendant Tanner was "aiming at center mass" when he shot at plaintiff, but he missed and hit plaintiff in the elbow. (*Id*. at ¶ 49.) Detective Carlson then yelled, "You shot Milton. I told you not to shoot him. I told you not to shoot him." (*Id*.) Plaintiff fell to the ground. (*Id*. at ¶ 50.) Several officers then transported him to the hospital. (*Id*. at ¶ 51.)

Green brought this action for relief under 42 U.S.C. § 1983, with subject matter jurisdiction granted by 28 U.S.C. §§ 1331 (federal question) and 1343(a)(3) (to redress a federal constitutional violation), and under Missouri law with subject matter jurisdiction granted by 28 U.S.C. § 1367. Plaintiff Green maintains the following claims:

(1) Unreasonable seizure in violation of the Fourth and Fourteenth Amendments against defendant Tanner under 42 U.S.C. § 1983 (Count 1);

(2) Use of excessive force in violation of the Fourth and Fourteenth Amendments against defendant Tanner under 42 U.S.C. § 1983 (Count 2);

(3) Engaging in customs of unreasonable seizures, excessive force, and failure to train and supervise, a *Monell* claim under 42 U.S.C. § 1983 against defendant City (Count 3); and

(4) Battery under Missouri law against defendant Tanner (Count 4).[1]

(Doc. 1.)

## **GENERAL LEGAL PRINCIPLES**

Summary judgment is appropriate "if there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party." *Shrable v. Eaton Corp.*, 695 F.3d 768, 770-71 (8th Cir. 2012); *see also* Fed. R. Civ. P. 56(a). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477

---

[1] In his response to defendants' motion for summary judgment, plaintiff states that he intends to dismiss his claim for negligent infliction of emotional distress (Count 5 in the complaint) and his state law battery claim against defendant City (Count 4). (Doc. 99-24 at 26 n.10)

3

U.S. 317, 323 (1986).  A dispute is genuine if the evidence may prompt a reasonable jury to return a verdict for either the plaintiff or the defendant, and it is material if it would affect the resolution of a case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 252 (1986); *Rademacher v. HBE Corp.*, 645 F.3d 1005, 1010 (8th Cir. 2011).

The burden shifts to the non-moving party to demonstrate that disputes of fact do exist only after the movant has made its showing.  *Anderson*, 477 U.S. at 252.  It is the nonmoving party's burden to set forth affirmative evidence and specific factual support by affidavit and other evidence to avoid summary judgment.  *Id.* at 256; *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999).  If reasonable minds could differ as to the import of the evidence, summary judgment is not appropriate.  *Anderson*, 477 U.S. at 250.  The court must view the facts in the light most favorable to the non-moving party, but it is not required to accept unreasonable inferences or sheer speculation as fact.  *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 791 (8th Cir. 2009).

## DISCUSSION

**Plaintiff's § 1983 unreasonable seizure and excessive force claims**

In defense against plaintiff's § 1983 unreasonable seizure and excessive force claims, defendant Tanner asserts that he is protected by qualified immunity from suit.  In resolving questions of qualified immunity at summary judgment, courts must engage in a two-pronged inquiry: (1) whether the facts, considered in the light most favorable to the plaintiff, show that the officer's conduct violated a federal right; and (2) whether the right was "clearly established" at the time of the alleged violation.  *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014).  If either prong is not satisfied, then qualified immunity will apply. *Thurairajah v. City of Fort Smith, Arkansas*, 925 F.3d 979, 982-83 (8th Cir. 2019).  "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law or fact."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation and citation omitted).

"A police officer's use of deadly force against a subject is a 'seizure' under the Fourth Amendment." *Cole Estate of Richards v. Hutchins*, 959 F.3d 1127, 1132 (8th Cir. 2020) (citation omitted).  Therefore, all claims that an officer has used excessive force "in the course of an arrest, investigatory stop, or other seizure are analyzed under the Fourth Amendment's objective reasonableness standard." *Nance v. Sammis*, 586 F.3d 604, 609-10 (8th Cir. 2009) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (citing *Graham v. Connor*, 490 U.S. at 396).  "The calculus of reasonableness must embody allowance for the fact that police are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. at 396-97.  The inquiry requires careful attention to the facts and circumstances of each case, including

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*McDaniel v. Neal*, 44 F.4th 1085, 1090 (8th Cir. 2022) (citing *Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2241 (2021)).  The Court must consider the totality of the circumstances in the light most favorable to plaintiff. *Capps v. Olson*, 780 F.3d 879, 884 (8th Cir. 2015).

Where an officer has probable cause to believe that a subject poses a threat of serious physical harm, either to the officer or to others, it is reasonable under the Fourth Amendment to use deadly force. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). "Generally, an individual's mere possession of a firearm is not enough for an officer to have probable cause to believe that individual poses an immediate threat of death or serious bodily injury; the suspect must also point the firearm at another individual or take similar 'menacing action.'" *Cole Estate*, 959 F.3d at 1132. "Before employing deadly force, an officer should

give 'some warning' when it is 'feasible' to do so." *Loch v. City of Litchfield*, 689 F.3d 961, 967 (8th Cir. 2012) (quoting *Tennessee v. Garner*, 471 U.S. at 11-12).

The Court must analyze the events preceding the shooting from defendant Tanner's perspective to determine whether he had probable cause to believe that plaintiff posed an immediate threat of death or serious bodily injury. Defendant Tanner arrived at the scene of the shooting as the result of a car chase, during which gunshots were fired by the suspects at his and other police vehicles and after which he saw three suspects bail out of and run away from the vehicle. (Doc. 99-16 at 50:10-11, 53:1.) As he approached plaintiff, he saw him lying on the ground with his gun two feet in front of him. (*Id*. at 83:4-12.) He saw plaintiff pick up the gun while standing up, and he perceived that plaintiff was raising it above his waist. (*Id*. at 87:1-2, 93:24-25.) When Tanner pointed the flashlight at plaintiff, he perceived a "nickel-plated gun," though he now understands that "it was actually [plaintiff's department-issued] Beretta." (*Id*. at 93:25, 94:1-2.) He did not see what plaintiff's left hand was doing, but he noted that plaintiff raised both of his hands. (*Id*. at 99:9, 19.) Plaintiff was not facing defendant Tanner directly, but plaintiff's gun was. (*Id*. at 89:8-9.) Defendant Tanner identified himself as a police officer and yelled "Drop the gun" multiple times before shooting plaintiff. (*Id*. at 95:16-18.) He also stated that, at the time he shot plaintiff, he did not see on plaintiff any police identification, including a badge. (*Id*. at 242:24-25.) It is undisputed that at the time defendant Tanner shot plaintiff, plaintiff was holding his silver metal police badge in his left hand and extending his left arm so that his badge was visible. (Doc. 91 at ¶ 40; Doc. 99-1 at ¶ 27.)

Viewing the evidence in the light most favorable to plaintiff, the Court assumes for the purposes of summary judgment that defendant Tanner instructed plaintiff to drop his gun at least once but did not give him time to comply.[2] The court also assumes that the

---

[2] Plaintiff states that defendant Tanner yelled at him to drop his gun but did not give him adequate time to put his weapon down. Defendant Tanner asserts that he told plaintiff two or three times to put his gun down. Detectives Carlson and Bell do not remember hearing a warning, and Detective Burle, defendant Tanner's partner, does not know whether defendant Tanner gave plaintiff enough time to comply.

gunfight between the other officers and suspects had ceased, as the evidence regarding the time between the last gunfire and defendant Tanner shooting plaintiff is inconsistent. (Doc. 99-16 at 105:8-9, 113:12-13; Doc. 91-2 at 66:17-20, 151:4-7.)

Defendant Tanner first cites *Liggins v. Cohen*, 971 F.3d 798 (8th Cir. 2020), to support his contention that his use of force was objectively reasonable. *Liggins* concerned an officer who shot a juvenile suspect while the juvenile was running and holding a gun in his hand. *Id*. at 800. The court assumed that the barrel of the gun was pointed down and that the officer did not give a warning before shooting the juvenile. *Id*. The Eighth Circuit held that the officer was entitled to qualified immunity because he had reasonable grounds to believe that the fleeing juvenile could raise the gun and shoot in a split second. *Id*. at 801. It concluded that "[i]n dangerous situations where an officer has reasonable grounds to believe that there is an imminent threat of serious harm, the officer may be justified in using a firearm before a subject actually points a weapon at the officer or others." *Id*. *Liggins* is distinguishable from this case in that defendant Tanner acted based on a different "confluence of circumstances." *Id*. at 802. Here, plaintiff was not fleeing or moving at a high rate of speed. Plaintiff did not take any steps towards defendant Tanner, but Tanner perceived that plaintiff was holding a pistol and raising it above his waist. (Doc. 99-16 at 92:10-22.)

The second case cited by defendant Tanner, *Loch v. City of Litchfield*, 689 F.3d 961 (8th Cir. 2012), is more analogous. The officer in that case responded to a call reporting that the plaintiff was intoxicated and trying to leave his residence in his vehicle. *Id*. at 964. When the officer arrived on the scene, the plaintiff's brother-in-law yelled that the plaintiff had a gun; the officer did not see or hear the plaintiff throw his gun out of the window. *Id*. The plaintiff engaged in a nose-to-nose confrontation with his brother-in-law, and the officer pointed his gun at the plaintiff and ordered everyone to get on the ground. *Id*. The plaintiff then turned and began walking towards the officer with his hands raised above his head or out to his side, and the officer repeatedly ordered him to the ground; the officer also heard plaintiff say something that included the word "kill." *Id*. As the plaintiff reached the edge of the street, he slipped on a snowbank, and one of his hands moved toward his

7

side. *Id*. The officer fired, hitting the plaintiff multiple times. *Id*. The officer told an investigator that he saw a black object on the plaintiff's hip, which he believed to be a holster or firearm but which was later determined to be a cell phone holder. *Id*. The Eighth Circuit held that the officer was entitled to qualified immunity because he knew that the plaintiff was intoxicated, he had been told that the plaintiff had a gun, the plaintiff continued walking toward him after he ordered him to the ground, he heard the plaintiff say "kill," and he saw one of the plaintiff's hands move to his side as he fell on the snowbank. *Id*. at 967.

Defendant Tanner encountered similarly volatile facts and circumstances in this case. He arrived at the scene as the result of a car chase with a stolen vehicle, during which the vehicle's occupants shot repeatedly at the pursuing officers' vehicles. He knew that three suspects bailed out of the chased vehicle and fled. While plaintiff asserts that Detective Carlson yelled that plaintiff was an off-duty officer and that no one should shoot, no evidence in the record suggests that defendant Tanner heard Carlson's instruction. As he approached plaintiff's area, he saw plaintiff stand up while picking up a gun, and he perceived that plaintiff was raising the gun in his direction. Under these circumstances, defendant Tanner had probable cause to believe that plaintiff posed an immediate threat of death or serious bodily injury, and his use of force was therefore reasonable. Additionally, even if defendant Tanner instructed plaintiff to drop his gun but did not give plaintiff time to comply, his use of force was reasonable. When defendant Tanner perceived that plaintiff was pointing a gun at him, Tanner could have reasonably concluded that it was not feasible to wait for plaintiff's compliance.

The cases cited by plaintiff are distinguishable. In *Nance v. Sammis*, two officers were conducting surveillance in the area of a convenience store after receiving a report that two or three black males were going to rob the store. 586 F.3d 604, 606-07 (8th Cir. 2009). The officers noticed two black males, who were later determined to be 12 and 14 years old, approaching the area of the store, one of whom had a toy gun tucked into his waistband. *Id*. at 607. After instructing the boys to get on the ground and drop the gun, one of the officers shot and killed the boy with the toy gun in his waistband. *Id*. Affirming the denial

of qualified immunity, the Eighth Circuit presumed that the officers approached the boys without identifying themselves as officers, that the decedent's toy gun was tucked in his pants throughout the confrontation, that the shooting officer only said to drop the gun and get on the ground, and that the decedent may have raised his hand or hands while trying to get on the ground before the shooting officer shot him twice without warning. *Id*. at 610-11.  The court noted that the officers' knowledge that they might encounter a dangerous situation, by itself, would not permit the use of deadly force. *Id.* at 611.  Conversely, in this case, defendant Tanner perceived that plaintiff was pointing a gun at him.  He did not shoot plaintiff solely because he believed the situation was dangerous but because he had probable cause to believe that plaintiff posed a threat of serious harm to him.

In *Wealot v. Brooks*, the Eighth Circuit reversed the district court's grant of qualified immunity because there were genuine disputes of material fact as to whether the officer saw the decedent throw his gun, rendering him unarmed, and whether at the time the officer shot him, he was turning to the officers and raising his hands in surrender.  865 F.3d 1119, 1125 (8th Cir. 2017).  The court noted that the officers' key testimony about the gun was controverted by other witnesses, some of their own inconsistent statements, and some physical evidence.  *Id*. at 1128.  The court also stated, however, that it has affirmed that grant of qualified immunity in many cases "to officers who applied deadly force to an unarmed suspect because [the court] concluded the officers held a reasonable belief the suspect was dangerous."  *Id*.  *Wealot* is inapposite.  No evidence in this case controverts defendant Tanner's reasonable belief that plaintiff was holding a gun at or near his waistline. (Doc. 99-16 at 93:25, 94:1-2; Doc. 91-9 at 19-21.)

In *Cole Estate of Richards v. Hutchins*, the officer shot the decedent as the decedent was pointing his gun either at the sky or at the ground.  959 F.3d 1127, 1133 (8th Cir. 2020).  The Eighth Circuit concluded that the officer's use of force was not objectively reasonable because, at the time the officer fired the shots, the decedent was not wielding the gun in a menacing fashion and therefore did not pose an immediate threat of serious physical harm.  *Id*.  The court also noted that the officer's failure to provide a warning further confirmed that the use of deadly force was objectively unreasonable.  *Id*. at 1133-

9

34. Unlike in *Wealot*, in this case, defendant Tanner mistakenly perceived that plaintiff was wielding his gun in a menacing fashion by pointing it at Tanner. Conversely, in *Smith v. Kilgore*, the Eighth Circuit affirmed the district court's grant of summary judgment where the evidence consistently showed that the decedent pointed his gun at the shooting officer. 926 F.3d 479, 484 (8th Cir. 2019). While the evidence here does not show that plaintiff was actually pointing a gun at defendant Tanner, it consistently shows that defendant Tanner perceived that plaintiff was pointing a gun at him. Defendant Tanner's mistake and his resulting use of force were reasonable.

In *Banks v. Hawkins*, the Eighth Circuit affirmed the denial of summary judgment where the officer shot the plaintiff immediately upon the plaintiff opening the door to his home. 999 F.3d 521, 526 (8th Cir. 2021). The court concluded that the officer's belief that the plaintiff was an immediate threat was unreasonable, as he waited more than ten minutes after hearing screams to attempt entry and had no reason to believe that the situation was still dangerous when the plaintiff opened the door. *Id* at 525-26. Here, while the record is inconsistent regarding the time between the end of the gunfight on the scene and defendant Tanner's gunshot, Tanner believed that plaintiff was an immediate threat because he perceived that plaintiff was pointing a gun in his direction.

Plaintiff cites *Capps v. Olson*, 780 F.3d at 885, and *Williams v. City of Burlington, Iowa*, 27 F.4th 1346, 1351 (8th Cir. 2022), in his surreply for the proposition that the jury must decide whether defendant Tanner's mistake was reasonable. *Capps* is inapposite because the district court held that the officer's use of the phrase "weapons unknown," as well as other evidence regarding the presence of a weapon, could have been interpreted by a jury to mean that the decedent did not have a weapon and that the officer did not believe that the decedent had a weapon. 780 F.3d at 885. Further, in *Williams*, while the officer argued that he did not see the decedent drop the gun, the decedent's estate marshalled competing evidence to support the claim that the officer saw the decedent drop the gun and that the decedent was not in a shooting posture. 27 F.4th at 1351. Both cases contained evidence that called into question the reasonableness of the officer's mistake as to the presence of a weapon. Here, it is undisputed that plaintiff was holding his gun in one hand

and his badge in the other.  The question is whether it was reasonable as a matter of law for defendant Tanner to mistake plaintiff's nickel-plated badge for a gun.  The Court concludes that it was.

Plaintiff contends that defendant Tanner cannot claim that he shot plaintiff based on a "mistaken perception or belief" because he intended to shoot plaintiff.  (Doc. 99-24 at 18.)  But it is the perception underlying the act, not the intentionality of the act itself, that is at issue.  Plaintiff points out in his surreply that defendant Tanner testified that he vividly and distinctly recalled seeing a gun in plaintiff's hand, and he faulted plaintiff for failing to have his badge.  Such testimony strengthens defendant Tanner's contention that his perception of the badge as a gun was a mistake of fact.  The relevant inquiry, then, is not whether defendant Tanner intentionally shot plaintiff, but whether his mistaking plaintiff's badge for a gun was reasonable.  The Court concludes that it was.

Because it has concluded that defendant Tanner did not violate plaintiff's rights to be free from unreasonable seizure and excessive force, the Court does not analyze whether plaintiff's rights were clearly established at the time of the shooting.  "Courts should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'"  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

The Court grants defendant Tanner's motion for summary judgment as to plaintiff's § 1983 unreasonable seizure and excessive force claims.

**Plaintiff's *Monell* claim**

Plaintiff alleges that defendant City had a custom of failing to adequately investigate officer-involved uses of force.  Plaintiffs establish § 1983 municipal liability if they prove that their constitutional rights were violated by "'an action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a custom or usage with the force of law.'"  *Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998) (citing *Monell v. Dept. of Soc. Serv.*, 436 U.S.

11

658, 691 (1978)). To show a "custom or usage," plaintiffs must prove "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) an injury by acts pursuant to the governmental entity's custom." *Mitchell v. Kirchmeier*, 28 F.4th 888, 899-900 (8th Cir. 2022) (cleaned up).

However, "absent a constitutional violation by a city employee, there can be no § 1983 or *Monell* liability for the City." *Whitney v. City of St. Louis, Missouri*, 887 F.3d 857, 861 (8th Cir. 2018); *see also Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017). As discussed above, the Court concludes that defendant Tanner's use of force was objectively reasonable, so there was no constitutional violation. The Court therefore grants defendants' motion for summary judgment as to plaintiff's *Monell* claim.

**Plaintiff's battery claim**

Missouri applies the doctrine of official immunity to protect public employees from liability for certain torts committed during the performance of discretionary, but not ministerial, acts as part of their official duties. *Hendrix v. City of St. Louis*, 636 S.W.3d 889, 902 (Mo. Ct. App. 2021) (citing *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008)). "A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued," while a ministerial function "is one of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Southers*, 263 S.W.3d at 610. The category into which an act falls is determined "on a case-by-case basis" considering three factors: "(1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity." *Id.* An act is discretionary where there is any room

12

whatsoever for variation in when and how a particular task can be done. *Davis v. Buchanan Cnty. (Davis II)*, 11 F.4th 604, 629 (8th Cir. 2021).

"An 'officer's decision to use force in the performance of his duties is discretionary.'" *Boude v. City of Raymore*, 855 F.3d 930, 935 (8th Cir. 2017) (applying Missouri law); *Davis v. White (Davis I)*, 794 F.3d 1008, 1013 (8th Cir. 2015); *Seiner v. Drenon*, 304 F.3d 810, 813 (8th Cir. 2002) (applying official immunity to a case involving state law claims of battery, assault, and excessive force); *Richardson v. Sherwood*, 337 S.W.3d 58, 63 (Mo. Ct. App. 2011) (citing cases applying official immunity to intentional tort claims of false imprisonment, assault, and malicious prosecution); *DaVee v. Mathis*, 812 S.W.2d 816, 827 (Mo. Ct. App. 1991) (officers were entitled to official immunity on the plaintiff's assault claim).

In order to overcome official immunity, a plaintiff must present evidence to show that the defendant officer's conduct was "done in bad faith or with malice." S*tate ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. 1986); *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. 2019) (official immunity protects officials who act within the course of their official duties and without malice). Bad faith "requires a dishonest purpose, moral obliquity, conscious wrongdoing, [or] breach of a known duty through some ulterior motive," while malice "involves actions that are so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith or [an] improper or wrongful motive." *N.S. ex rel. Lee*, 2022 WL 1739233, at *3. "In Missouri, a bad-faith allegation survives summary judgment if a plaintiff states facts from which it could reasonably be inferred that [defendant] acted in bad faith or from an improper or wrongful motive." *Boude*, 855 F.3d at 935.

Plaintiff contends that the Court can infer defendant Tanner's bad faith or malice from evidence showing that plaintiff did not present a threat to Tanner and that Tanner shot him without providing time to comply with his warning and with the intent to kill him. (Doc. 99-24 at 27.) As discussed above, the Court concludes that defendant Tanner mistakenly believed that plaintiff's badge was a gun and that, based on this misperception, his use of force was reasonable. Viewing the evidence in the light most favorable to

13

plaintiff, there are not facts from which the Court could reasonably infer bad faith or malice. The Court grants defendant Tanner's motion for summary judgment on plaintiff's battery claim.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the motion of defendants for summary judgment **[Doc. 89] is granted.**

**IT IS FURTHER ORDERED** that the motion of defendants to exclude the report and testimony of Jeffrey Noble **[Doc. 92] is denied as moot.**

**IT IS FURTHER ORDERED** that the motion of plaintiff to compel **[Doc. 101] is denied as moot.**

An appropriate Judgment Order is issued herewith.

/s/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 6, 2023.